UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **LEA-MAX CORPORATION,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:23-cv-00164-GSL-SLC |
| **GOULD ELECTRONICS, INC.,** *et al.*, | ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

On October 30, 2024, after hearing oral argument, this Court granted a motion to compel production of documents (ECF 149) filed by Defendant Gould Electronics, Inc. ("Gould"), and ordered Plaintiff to produce the requested discovery documents, consisting of nine agent files and a privilege log, on or before November 14, 2024. (ECF 162). In doing so, the Court directed Gould to file a fee petition in support of its request for attorney fees and expenses incurred in litigating the motion to compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). (*Id.*).

Now before the Court is Gould's fee petition in the form of a Declaration of Attorney Nicholas J. Secco (the "Declaration") (ECF 165), together with supporting materials and a memorandum (ECF 165-1 to ECF 165-3), filed on December 20, 2024, seeking recovery of $123,650.50 in attorney fees and expenses that Gould incurred in litigating the motion to compel. (ECF 165 Ý 28; ECF 165-2).[1] The supporting materials include partially-redacted billing invoices for August through November 2024 from Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch" and the "Benesch Invoices"), whose attorneys litigated the motion to compel on

---

[1] Of this amount, $12,678.95 relates to the time Gould spent preparing the Declaration and supporting memorandum. (ECF 165 ¶ 28).

Gould's behalf (ECF 165-1), and a spreadsheet tabulating their recoverable fees (ECF 165-2). Gould states that the fees visible on the Benesch Invoices "relate exclusively to work [Gould] performed relating to Plaintiff's failure to comply with the [d]iscovery [a]greement, which failure necessitated the Motion to Compel." (ECF 165-3 at 4).

Plaintiff filed a response in opposition to the fee petition on January 21, 2025, together with supporting exhibits, asking that the Court deny Gould the requested fees, or alternatively, reduce the rates charged and the time billed as excessive. (ECF 169; ECF 169-1 to 169-6). Gould timely filed a reply brief on February 6, 2025 (ECF 170), together with a Supplemental Declaration of Attorney Secco, an annotated version of the Benesch Invoices, and one other exhibit (ECF 170-1 to 170-3). The issue is ripe for ruling. For the following reasons, the Court will grant Gould's fee petition in part, reducing the time spent in litigating the motion to compel to result in a fee award of $92,923.20.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 37(a) governs the imposition of expenses and sanctions related to a motion to compel. It provides, in pertinent part:

(a) Motion for an Order Compelling Disclosure or Discovery.

> (1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
>
> . . . .
>
> (5) *Payment of Expenses; Protective Orders.*
>
>> (A) . . . If the motion is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

2

>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a).

This Rule "presumptively requires every loser to make good the victor's costs . . . ." *Rickels v. City of S. Bend*, 33 F.3d 785, 786 (7th Cir. 1994) (citation omitted). Such fee-shifting "encourages . . . voluntary resolution" of discovery disputes and "curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." *Id.* at 787. Accordingly, "the loser pays" unless he establishes "that his position was substantially justified." *Id.* at 786-87.

"Reasonable attorney fees under Rule 37 are calculated using the 'lodestar' method, which is a reasonable hourly rate multiplied by the hours reasonably expended." *L.H.H. ex rel. Hernandez v. Horton*, No. 2:13-CV-452-PRC, 2015 WL 1057466, at *1 (N.D. Ind. Mar. 10, 2015) (citing *Johnson v. GDR, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007)). "A reasonable rate is one 'derived from the market rate for the services rendered.'" *Id.* (quoting *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 640 (7th Cir. 2011)). "The Court must also determine whether an attorney's requested award is for hours reasonably spent." *Zimmer, Inc. v. Beamalloy Reconstructive Med. Prods., LLC*, No. 1:16-cv-00355-HAB-SLC, 2019 WL 2635944, at *4 (N.D. Ind. June 27, 2019) (citing *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 554 (7th Cir. 1999)). "Ultimately, the party seeking an award of attorneys' fees bears the burden of proving the reasonableness of the hours worked and

the hourly rates claimed." *Bratton v. Thomas L. Firm, PC*, 943 F. Supp. 2d 897, 902 (N.D. Ind. 2013) (citing *Spegon*, 175 F.3d at 550).

### III. ANALYSIS

*A. Gould Will Be Awarded Its Reasonable Fees and Expenses*

As explained above, the Court granted Gould's motion to compel, and thus under Rule 37(a), Plaintiff must pay Gould's reasonable fees and expenses unless Plaintiff can show its position was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Plaintiff contends that Gould's fee petition should be denied in its entirety because Plaintiff's position was substantially justified. (ECF 169 at 7-12). Under Rule 37(a)(5)(A)(ii), a party's resistance to discovery is "substantially justified" when there is "a genuine dispute." *Rackemann v. LISNR, Inc.*, No. 1:17-cv-00624-MJD-TWP, 2018 WL 3328140, at *3 (S.D. Ind. July 6, 2018) (citations omitted). Put another way, resistance is substantially justified "if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations and brackets omitted).

Plaintiff contends that its position is substantially justified because prior to the parties' June 24, 2024, discovery agreement, in which Plaintiff agreed to produce the nine agent files, any objections, and a privilege log (the "discovery agreement") (*see* ECF 150-1 at 2-3), Plaintiff reasonably objected to Gould's discovery requests as overly broad and violating the distinction between Phase I and Phase II discovery established at the preliminary pretrial conference. (ECF 169 at 8; *see* ECF 86 at 2-5; ECF 88, 89). Plaintiff also asserts that it had reasonable bases to argue that Gould did not properly request the documents at issue, and to withhold the privileged agent files under relevant caselaw and Federal Rule of Civil Procedure 34. (ECF 169 at 8-11). Finally, Plaintiff argues that there was a genuine dispute as to whether the Federal Rules required Plaintiff to produce a privilege log for documents contained in attorney files, contending that the

4

privilege log imposed an "undue burden" on Plaintiff. (*Id.* at 10-12).

For the reasons already stated on the record when ruling on the motion to compel (*see* ECF 162), Plaintiff's arguments are unpersuasive. Regardless of Plaintiff's initial posturing in response to the discovery requests, it is clear that the parties entered into the discovery agreement on June 24, 2024, to resolve their discovery dispute, and that Plaintiff subsequently reneged on that discovery agreement by failing to produce the agent files and privilege log. (ECF 150-1 at 2-3). "If the parties could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them." *FrenchPorte IP, LLC v. C.H.I. Overhead Doors, Inc.*, No. 21-CV-2014, 2023 WL 2447591, at *3 (C.D. Ill. Mar. 10, 2023) (citation and brackets omitted). "A meet and confer process furthers the discovery process only if the parties abide by the terms of their discovery agreements and the Court 'enforces' the agreements." *Druding v. Care Alts.*, No. 08-2126 (JBS/AMD), 2017 WL 11461795, at *3 (D.N.J. June 21, 2017) (citations omitted); *see also Roy v. FedEx Ground Package Sys., Inc.*, No. 3:17-cv-30116-KAR, 2021 WL 3727143, at *8 (D. Mass. Aug. 23, 2021) (collecting cases).

Consequently, Plaintiff's response and objections to Gould's motion to compel are not substantially justified and an award in this case would not be unjust. Therefore, the Court will move on to Plaintiff's alternative argument ¦ that the hourly rates and time billed by Gould's attorneys are excessive.

### *B. Attorney Hourly Rates*

Plaintiff argues that the hourly rates billed by Gould's senior attorneys in litigating the motion to compel are excessive. (ECF 169 at 14). Specifically, Plaintiff accuses Gould of "seek[ing] to recover attorney's fees based on inflated and unjustifiable hourly rates that far exceed prevailing market rates in the Northern District of Indiana, particularly for routine discovery disputes." (*Id.*)

5

"An attorney's actual billing rates for comparable work is 'presumptively appropriate' to use as a reasonable rate." *Shoun v. Best Formed Plastics, Inc.*, No. 3:14-CV-463-RLM, 2015 WL 4664160, at *2 (N.D. Ind. Aug. 6, 2015) (citation omitted); *see also Mathur v. Bd. of Trs. of S. Ill.*, 317 F.3d 738, 743 (7th Cir. 2014); *Marcum v. Graphic Packaging Int'l, Inc.*, No. 1:13-CV-158, 2013 WL 5406236, at *2 (N.D. Ind. Sept. 25, 2013). "[O]ur preference is to compensate attorneys for the amount that they would have earned from paying clients, *i.e.*, the standard hourly rate." *Mathur*, 317 F.3d at 743; *Davis v. Lakeside Motor Co.*, No. 3:10-CV-405 JD, 2014 WL 3341033, at *2 (N.D. Ind. July 7, 2014) ("The Court presumes that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." (citation omitted)). "[I]f an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount." *Doxtator v. O'Brien*, No. 19-C-137, 2021 WL 1997581, at *1 (E.D. Wis. May 19, 2021) (quoting *Mathur*, 317 F.3d at 743-44). "A judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community." *Marcum*, 2013 WL 5406236, at *2 (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)).

"[W]here . . . attorneys provide the rates actually billed, the burden shifts to the party opposing the fee award to demonstrate why a lower rate should be awarded." *Zimmer, Inc.*, 2019 WL 2635944, at *7 (citations omitted); *see also Struve v. Gardner*, No. 1:19-cv-04581-RLY-MJD, 2021 WL 1948868, at *1 (S.D. Ind. May 14, 2021). "An attorney may charge higher than the community's average if she possesses an unusual amount of skill, the ability to emphasize with the jury, investigative abilities, or other qualities which command a premium." *Mathur*, 317 F.3d at 743. "However, if the district court decides that the proffered rate overstates the value of an attorney's services, it may lower them accordingly." *Id.* (citation omitted).

Plaintiff contends that the hourly rates billed by Gould's "lead" attorneys, Nicholas J.

6

Secco and John A. Rego, are excessive. (ECF 169 at 14). Secco's rate is $795 per hour, and Rego's rate is $780 per hour. (*Id.; see also* ECF 165-1 at 43; ECF 170-3 at 43). Plaintiff asserts that "[e]ven considering the legal and factual complexities of this case, senior attorneys handling similar matters charge approximately $600/hour." (ECF 169 at 14 (citing *Struve*, 2021 WL 1948868, at *2 )). Plaintiff further criticizes Gould for relying on its "national defense counsel" to resolve this document production dispute, asserting that "[i]t was [Plaintiff's] document production at dispute, not [Gould's]." (*Id.*). Plaintiff posits that the motion to compel "did not require any understanding of [Gould's] corporate structure or document retention policies, such that national defense counsel could adjudicate the motion more efficiently or accurately," and that Gould "had already retained local counsel (Calvert Miller) to assist with routine matters such as discovery disputes." (*Id.* at 14-15). As such, Plaintiff asks that the Court reduce Secco's and Rego's rates by at least 25 percent. (*Id.* at 15).

Contrary to Plaintiff's objections, Gould properly supported Secco's and Rego's hourly rates. Gould submitted Secco's Declaration attesting to his and Rego's years of experience. (ECF 165). Secco has been a practicing attorney for more than 20 years and is currently a partner and the chair of the trial practice group at Benesch. (*Id.* ¶¶ 1, 3). He attests to having extensive experience representing parties in commercial litigation, including complex cases involving CERCLA and state law environmental claims, and litigating discovery disputes in federal court. (*Id.* ¶ 3). Similarly, Rego is a partner at Benesch and has decades of experience representing parties in complex litigation involving CERCLA and state law environmental claims. (*Id.* ¶ 4). Further, Secco attests that his billable rate of $795 per hour and Rego's billable rate of $780 per hour are actually "discounted" by 15 percent from their standard rates, and that Gould has "accepted and . . . paid" these discounted rates in this matter. (*Id.* ¶¶ 3, 4, 10).

"[W]here, as here, attorneys provide the rates actually billed, the burden shifts to

7

[Plaintiff] to demonstrate why a lower rate should be awarded." *Zimmer, Inc.*, 2019 WL 2635944, at *7 (citation omitted). To that end, Plaintiff argues that Secco's and Rego's rates "exceed the typical market rates for similar work in this district. . . . [in that] senior attorneys handling similar matters charge approximately $600/hour." (ECF 169 at 14 (citing *Struve*, 2021 WL 1948868, at *2)). But Plaintiff relies on just one district court case from 2021 for this premise — a case in which the court approved an attorney fee for "work by two partners, two associates, and a paralegal, whose hourly rates for 2020 ranged from $285.00 to $645.00." *Struve*, 2021 WL 1948868, at *2. A four-year-old district court case from the Southern District of Indiana that merely recites the legal professionals' rates, standing alone, is not sufficient grounds for the Court to further discount Secco's and Rego's billable rates here. *See generally Rehder v. KMM Corp.*, No. 1:22-cv-00419-HAB-SLC, 2023 WL 6619425, at *2 (N.D. Ind. Oct. 10, 2023) (stating that many litigants before this Court hire Indianapolis attorneys who charge Indianapolis rates and rejecting argument that attorney's hourly rate must correspond to Fort Wayne's local market area). Plaintiff does not carry its burden of showing the Court why a lower billing rate should be awarded.[2]

In sum, Gould has produced satisfactory evidence that Secco's hourly rate of $795 and Rego's hourly rate of $780 for billable work completed in litigating the motion to compel are reasonable. Plaintiff's objection to the hourly rates billed by Benesch is overruled.[3]

---

[2] While the Court is permitted to evaluate what "rates similarly experienced attorneys in the community charge paying clients for similar work . . . [,]" *Pickett*, 664 F.3d at 640 (citations omitted), "[o]nly if an attorney is unable to provide evidence of [his] actual billing rates should a district court look to other evidence . . . ." *Mathur*, 317 F.3d at 743 (citation omitted); *see Pickett*, 664 F.3d at 640 (stating that the hourly rates that "similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases" evaluated as the "next best evidence" when a Court has "difficulty [in] determining the hourly rate of an attorney who uses contingent fee agreements . . . ." (citations omitted)). Here, given that this is not a contingency fee case, there is no reason to depart from Secco's and Rego's actual billed rates in the reasonableness analysis.

[3] Plaintiff also suggests that Gould's local counsel, Attorney Miller, should have handled the motion to compel, rather than Gould's national legal counsel. (ECF 169 at 14-15). However, Gould responds that its national legal

8

*C. Time Billed*

Gould explains in its motion that it only seeks to recover those fees billed by counsel relating to Plaintiff's failure to comply with the June 24, 2024, discovery agreement, which prompted the motion to compel. (ECF 165-3 at 4). To calculate those fees, Gould collected the Benesch Invoices from August 2024 through November 2024, the period during which it incurred the motion-related fees. (*Id.* (citing ECF 165 ¶¶ 13, 23)). Gould then reviewed those invoices to isolate the entries reflecting hours Benesch attorneys spent on work relating to Plaintiff's breach of the discovery agreement and Gould's motion to compel. (*Id.* at 4-5 (citing ECF 165 ¶¶ 13, 19-21)).

Gould claims that "[o]nly entries were included that: (1) postdate Plaintiff's breach of the [d]iscovery [a]greement; and (2) would not have been necessary but for Plaintiff's breach of the [d]iscovery [a]greement and [Gould's] Motion to Compel." (*Id.* at 5 (citing ECF 165 ¶¶ 14, 19-21)). Gould explains that in some cases, time entries by Benesch professionals on the invoices include descriptions of multiple tasks performed for Gould on a given day, only some of which are fees related to the motion to compel. (*Id.* (citing ECF 165 ¶ 20)). "To estimate the relevant fees in such entries, Benesch divided the day's total hours billed by the number of total tasks, then assigned a pro-rata share to [m]otion-[r]elated [f]ees." (*Id.* at 5 (citing ECF 165 ¶ 20)).[4]

Gould emphasizes that it took multiple steps to exclude fees that the Court might not consider recoverable. (*Id.* at 6). First, as stated earlier, Gould excluded from its calculation all fees relating to work that predated Plaintiff's August 19, 2024, breach of the discovery

---

counsel viewed the dispute as inextricably intertwined with underlying substantive issues. (ECF 170 at 6). In any event, there is no evidence of record as to Miller's billing rate.

[4] For instance, "if a Benesch professional billed five hours to [Gould] on a particular day and performed five separate tasks, three of which relate to the Motion and two of which do not, Benesch counted only three of the five hours as [m]otion-[r]elated [f]ees (3/5 x 5 = 3)." (*Id.* (citing ECF 165 ¶ 20)).

9

agreement, even if they related to the underlying discovery dispute. (*Id.* (citing ECF 165 ¶ 22)). Next, Gould excluded fees spent on discovery tasks that would have been performed regardless of Plaintiff's breach of the discovery agreement or Gould's motion to compel. (*Id.* (citing ECF 165 ¶ 23)). Finally, Gould excluded time spent on "tasks relating to internal communications, strategizing, or coordination among or between Benesch attorneys," even if those tasks related to the motion to compel. (*Id.* at 7; *see* ECF 165 ¶ 24).

Plaintiff, however, objects to the amount of time billed by Gould. Plaintiff argues that: (1) Gould's block-billed time entries are "vague," (2) the fee request is "riddled with vague and inadequate time entries[,]" (3) the fee request includes excessive and unreasonable time entries for routine tasks, (4) Gould's attorneys engaged in excessive and unnecessarily duplicative work, (5) Gould seeks to recover fees for excessive internal communications, and (6) Gould's documentation is "incomplete and flawed[,]" rendering the fee request unreliable. (ECF 169 at 15-23). The Court will address these arguments in turn.

    1. <u>Block Billing and Incomplete Documentation</u>

Secco explains in the Declaration that certain time entries in the Benesch Invoices describe multiple tasks performed for Gould on a given day, only some of which are related to the motion to compel. (ECF 165 ¶ 20). Therefore, to estimate the time spent on relevant tasks in a block-billed entry, Benesch "divided the day's total hours billed by the number of daily tasks entered and assigned a pro-rata share to the [m]otion-[r]elated [f]ees." (*Id.*). Plaintiff objects to Gould's method of block billing, arguing that "lumping multiple, unrelated tasks into a single time entry . . . prevents meaningful review and makes it impossible to determine whether each task was necessary or reasonably performed." (ECF 169 at 15). Plaintiff further argues that Gould's billing documentation is incomplete and flawed in that it fails to show "how much time was allocated between the unredacted and redacted tasks." (*Id.* at 22).

10

But fee shifting does not require "auditing perfection[.]" *Crissen v. Gupta*, No. 2:12-CV-00355-JMS, 2014 WL 4449928, at *1 (S.D. Ind. Sept. 10, 2014) (citation omitted). "[A]ttorneys aren't required to record in great detail how each minute of their time was expended, but they should at least identify the general subject matter of their time expenditures." *Smith v. Nexus RVs, LLC*, No. 3:17-CV-815 DRL, 2021 WL 5411078, at *4 (N.D. Ind. Nov. 19, 2021) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "[A]lthough not ideal, block billing is not a prohibited practice in the fee-shifting context." *Loparex, LLC v. MPI Release Techs., LLC*, No. 1:09-CV-01411-JMS, 2011 WL 2066666, at *3 (S.D. Ind. May 25, 2011) (citation and internal quotation marks omitted); *see also Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice."). "Prorating is also a common billing practice. As with block billing, the Court will not impose an 'automatic' negative treatment on the prorated entries; the fees requested must simply be reasonable." *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111-WTL-MJD, 2019 WL 10947458, at *4 (S.D. Ind. Feb. 27, 2019).

Yet, "block billing isn't without consequence." *Loparex, LLC*, 2011 WL 2066666, at *3. "Where time entries encompass both compensable and non-compensable tasks . . . the block billing somewhat complicates [the movant's] ability to satisfy their burden of proving the amount of time actually spent on the compensable tasks." *Id.* (awarding "nominal" attorney fees for each day where counsel's block-billed time reflects both compensable and non-compensable activities, "thereby vindicating [d]efendants' right to recover for [the plaintiff's] wrongful conduct while at the same time guarding against an excessive recovery on those days" (citation omitted)).

"When reviewing block-billed entries, the court must consider whether the entries are 'sufficiently detailed to permit adequate review of the time billed to specific tasks' and whether

11

that time was reasonably necessary." *Thomas v. Shoshone Trucking, LLC*, 2023 WL 2649490, at *8 (S.D. Ind. Mar. 27, 2023) (quoting *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008)). "[Some] courts in this circuit have reduced block-billed fees on a percentage basis or disallowed those entries altogether." *Id.* at *8 (collecting cases); *see also Lock Realty Corp. IX v. U.S. Health, LP*, No. 3:05-CV-715 RM, 2012 WL 90150, at *6 (N.D. Ind. Jan. 10, 2012) (rejecting fees documented by block billing, explaining that "[t]he use of block billing, inclusion of services that can't be identified as related to or compensable in this case, the lack of detail with respect to the type of services rendered and the amount of time expended on each, and the overlap between this case and *Lock II* make it impossible to determine whether the amounts claimed in the challenged entries were reasonable and necessary to this litigation"); *Habitat Educ. Ctr., Inc. v. Bosworth*, No. 03C1023, 03C1024, 04C0254, 2006 WL 839166, at *7 (E.D. Wis. Mar. 29, 2006) ("When a fee petition includes entries that are overly vague or inadequately documented or employs block billing, a court may either strike the problematic entries or (in recognition of the impracticality of performing an item-by-item accounting) reduce the proposed fee by a reasonable percentage." (citing *Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000)).

Here, Plaintiff asks the Court to reduce 5 billing entries due to block billing and inadequate documentation: 10.9.24 (Illes), 10.15.24 (Kerkhoff), 10.28.24 (Illes), 10.11.24 (Illes), and 10.30.24 (Secco). (*See* ECF 169 at 15-16; ECF 169-1). Having reviewed these entries, the Court finds that they are sufficiently detailed to permit adequate review of the time billed to specific tasks and whether that time was reasonably necessary. *See Thomas*, 2023 WL 2649490, at *8. Likewise, as to Plaintiff's argument that Gould's billing documentation fails to show how much time was allocated between the unredacted and redacted tasks (ECF 169 at 21-23), the Court finds Gould's annotated Benesch Invoices (ECF 170-3) and Supplemental Declaration

(ECF 170-2) submitted with its reply brief sufficient to support Benesch's approach of pro-rating billing entries that include both compensable and non-compensable tasks. To reiterate, "the Court will not impose an 'automatic' negative treatment on the prorated entries . . . ." *Knauf Insulation LLC*, 2019 WL 10947458, at *4.

Therefore, the Court will not reduce these entries solely because they were block billed or partially redacted and pro-rated.

2. <u>Vague Time Entries</u>

Plaintiff next argues that Gould's fee request "is riddled with vague and inadequate time entries that prevent the Court from assessing whether the hours billed were reasonable." (ECF 169 at 16). "In determining the reasonable number of hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley*, 461 U.S. at 434). Further, "where ambiguous time entries or redacted time entries impede meaningful judicial review, the courts are left with some discretion on how to proceed." *Thomas*, 2023 WL 2649490, at *7 (citation omitted) ("The Court believes that reducing Counsel's purported hours by a reasonable percentage appropriately resolves the issue caused by the redactions." (citations omitted)).

Here, Plaintiff asks that the Court reduce 9 billing entries based on vague and inadequate billing descriptions: 8.23.24 (Kerkhoff), 8.29.24 (Secco), 10.3.24 (Illes), 10.8.24 (Illes), 10.9.24 (Kerkhoff), 10.10.24 (North), 10.28.24 (Howells), 10.30.24 (Secco), and 10.30.24 (Secco). (ECF 169 at 16-17; ECF 169-2; *see* ECF 170-3 at 43). Having reviewed these entries, the Court will reduce just one entry based on a vague and inadequate billing description:

- On 8.29.24, Secco billed 1.75 hours as: "[D]evelop discovery plan per conversation with T. Illes." (ECF 170-3 at 14; ECF 169-2). This description does not identify whether the

13

discovery plan is related to the motion to compel, and thus could include unrelated work. Therefore, the entry will be excluded, resulting in a $1,391.25 reduction.[5]

In sum, 1.75 hours will be excluded due to a vague time entry, resulting in a $1,391.25 reduction.

### 3. Excessive Time and Duplicative Work

Plaintiff also argues that Gould's fee request should be reduced because it includes "excessive and unreasonable time entries for routine tasks." (ECF 169 at 17). For example, Plaintiff points to an October 28, 2024, billing entry in which Secco billed five hours to "[r]eview all key cases for Motion to Compel hearing sent by T. Illes." (*Id.* at 18; *see* ECF 170-3 at 36). As Plaintiff sees it, "[r]eviewing case law should not consume this much time for an experienced attorney, especially when another team member already completed the work." (ECF 160 at 17). Plaintiff contends there are other similar entries, "reflecting a broader pattern of overstaffing and inefficiency." (*Id.*). Similarly, Plaintiff contends that Gould's attorneys engaged in excessive and unnecessarily duplicative work, suggesting "a clear pattern of overstaffing and duplication." (*Id*. at 19). For example, Plaintiff asserts that multiple attorneys billed an excessive number of hours for reviewing and analyzing the same opposition brief. (*Id*.; *see* ECF 170-3 at 33-34). Plaintiff contends there are at least nine other instance where Gould engaged in similarly duplicative billing. (ECF 169 at 20).

"In determining the reasonable number of hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small*, 264 F.3d at 708 (quoting *Hensley*, 461 U.S. at 434). In doing so, the court must "provide a concise but clear explanation of its reasons for any reduction." *Id.* (citation and internal quotation marks omitted) ("[I]t is understandable

---

[5] The deductions of the billing entries are calculated using the applicable legal professional's hourly rate as set forth on the Benesch Invoices: Erick W. Howells $335, Trevor J. Illes $575, John F. Kerkhoff $410, Lily A. North $440, John A. Rego $780, and Nicholas J. Secco $795. (ECF 165-1 at 43; ECF 170-3 at 43).

that the judge would assume that much of the more routine work would be delegated to competent attorneys in the firm who charge at a much lower hourly rate.").

Plaintiff asks that the Court reduce the following billing entries due to excessive time spent on routine tasks or duplicative work: 10.9.24 (Illes), 10.11.24 (Illes), 10.14.24 (Rego), 10.28.24 (Howells), 10.28.24 (Secco), 10.30.24 (Illes), 10.8.24 (Secco, Illes, Kerkhoff), 10.9.24 (Kerkhoff, Illes), 10.10.24 (Kerkhoff, Illes, North), 10.11.24 (Illes, Rego, Secco), 10.28.24 (Howells, Illes, Secco), and 10.30.24 (North, Kerkhoff, Illes, Secco). (ECF 169 at 17-20; ECF 169-3, 169-5). Having reviewed these entries, the Court will reduce the following entries based on excessive time spent or duplicative work:

- On 10.28.24, Secco billed 5 hours as: "Review all key cases for Motion to Compel hearing sent by T. Illes." (ECF 170-3 at 36; ECF 169-3). A senior partner's review of cases, prepared by another attorney, pertaining to a discovery motion should not take 5 hours. Therefore, the entry will be reduced to 3 hours, resulting in a $1,590 reduction.

- On 10.8.24, Kerkhoff billed .80 hour and Illes billed 4.50 hours for reviewing and analyzing the same opposition brief to the motion to compel. (ECF 170-3 at 31; ECF 169-5). This work appears duplicative, and thus, Illes's entry will be reduced to 3 hours, resulting in a $862.50 reduction.

- From 10.9.24 to 10.11.24, Illes spent approximately 24 hours researching, drafting, and revising a reply brief to the motion to compel (ECF 170-3 at 32-33; ECF 169-3), which is in addition to the hours various counsel spent reviewing Plaintiff's response brief and reviewing and revising the reply brief. The filed reply brief consists of just 11 pages. (ECF 158). This is an excessive number of hours spent preparing a reply brief to a motion to compel, and thus, Illes's 10.9.24 and 10.11.24 entries will each be reduced to 4.5 hours, resulting in a $3,306.25 reduction.

- Further, on 10.11.24, Secco billed 3.75 hours for reviewing and revising the same reply brief to the motion to compel. (170-3 at 33; ECF 169-5). On 10.12.24, Kerkhoff billed 1.25 hours to do the same. (ECF 170-3 at 33). On 10.13.24, Rego billed 2.75 hours to do the same. (*Id.*). On 10.14.24, Rego billed .63 hours, North billed .25 hours, Kerkhoff billed .69 hours, Illes billed yet another 4.25 hours, and Secco billed 2.17 hours (which included a telephone conference) to do the same. (*Id.* at 33-34). This total number of hours, 15.74, spent reviewing and analyzing a reply brief to a motion to compel (which Illes had already "revised" on 10.11.24) is duplicative and excessive, and will be reduced to 3 hours for Illes ($718.75 reduction) and 2 hours for Secco ($3,116.40 reduction). Further, the time billed by Rego ($2,636.40 reduction), Kerkhoff ($795.40 reduction), and North ($110 reduction will be excluded. This results in a combined reduction of $7,376.95.

15

- On 10.28.24, Howells billed 1.83 hours and Illes billed 3 hours for collecting and reviewing the same case law. (ECF 170-3 at 35-36; ECF 169-5). This work appears duplicative and will be reduced to 1 hour for Howells ($278.05 reduction) and 2 hours for Illes ($575 reduction), resulting in a combined $853.05 reduction.

- On 10.28.24, Secco billed 5 hours and Illes billed 3 hours for reviewing cases and preparing for the same hearing. (ECF 170-3 at 36). This work appears duplicative and excessive, and will be reduced to 3 hours for Secco, resulting in a $1,590 reduction. Given that the 10.28.24 billing entry for Illes was already reduced to 2 hours above, the Court will not further reduce Illes's entry here.

- On 10.30.24, North, Kerkhoff, Illes, Rego, and Secco all prepared for and attended the hearing on the motion to compel. (*Id.*). It seems reasonable that two attorneys may prepare for and attend a court hearing on a discovery dispute, but not five legal professionals. *See Murray v. Conseco, Inc.*, No. 1:03-cv-1701-LJM-JMS, 2009 WL 363803, at 85 (S.D. Ind. Feb. 6, 2009) ("[T]he presence of four attorneys at a hearing on a motion for sanctions is excessive."). Therefore, the Court will exclude the .13 hours billed by North ($57.20 reduction), the .50 hours billed by Kerkhoff ($205 reduction), and the 1 hour billed by Rego ($780 reduction), but allow the 3.25 hours billed by Illes and the 4.58 hours billed by Secco, resulting in a combined reduction of $1,042.20.

In sum, 25.45 hours will be excluded based on excessive time spent on routine tasks or duplicative work, resulting in a reduction of $16,620.95.

4. Administrative and Clerical Tasks

Plaintiff also argues that Gould improperly billed administrative and clerical tasks at legal professional rates. As an example, Plaintiff points to an October 28, 2024, billing entry by Howells in which he billed 2.75 hours for: "Correspondence with L. North and collect cases from Westlaw in support of pleadings; review briefing in support of Motion to Compel." (ECF 169 at 18; *see* ECF 170-3 at 35). Plaintiff contends that "[c]ollecting cases from Westlaw and handling correspondence are clerical tasks that should have been performed by non-billing legal staff . . . ." (ECF 169 at 19). Indeed, "[g]enerally, attorney or paralegal time should not be charged for administrative tasks." *Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs.*, No. 1:19-cv-00165-DRL-SLC, 2022 WL 950604, at *7 (N.D. Ind. Mar. 3, 2022) (citation omitted).

16

Plaintiff asks that the Court reduce 5 billing entries due to administrative or clerical tasks billed at legal professional rates: 10.15.24 (Howells), 10.18.24 (Rego), 10.28.24 (Howells), 10.28.24 (Secco); and 10.30.24 (Kerkhoff). (ECF 169 at 18-19; ECF 169-4). Having reviewed these entries, the Court finds that just one entry in which administrative tasks were billed at legal professional rates:

- On 10.28.24, Howells billed 1.83 hours as: "[C]ollect cases from Westlaw in support of pleadings to be filed; review briefing in support of Motion to Compel to prepare case authority for use in upcoming hearing[.]" (ECF 170-3 at 35; ECF 169-4). Collecting cases from Westlaw and correspondence appears more administrative in nature. However, given that this billing entry was already reduced to 1 hour *supra*, the Court will not further reduce this entry here.

Therefore, no additional reduction based on administrative or clerical tasks billed at legal professional rates is necessary.

   5. Excessive Internal Communications

Next, Plaintiff seeks to reduce Gould's fee request where it seeks reimbursement for "excessive internal communications and strategy sessions—charges that [Gould] explicitly promised to exclude." (ECF 169 at 20). Indeed, Attorney Secco stated in his Declaration that he had "[e]xcluded any entries relating to internal communications, strategizing, or coordination among Benesch attorneys, even if those tasks related to the [motion to compel]." (ECF 165 Ý 24). In *Axis Ins. Co.*, this Court opined that "time . . . billed for 'strategizing' or 'corresponding' between [a party's] attorneys for the motion to compel is duplicative." 2022 WL 950604, at *6. The Court explained: "Time spent on . . . work consisting solely of communications among the various attorneys acting as co-counsel for the plaintiffs can[]not be allowed because such time was duplicative and unnecessary and, therefore, not reasonably spent." *Id.* (alteration in original) (citations omitted).

17

Here, Plaintiff asks that the Court reduce 65 billing entries due to internal conference references, asserting that they are included contrary to Secco's Declaration. (ECF 169 at 20-21); ECF 169-6). Due to the large number of these entries, the Court will not list them here. Suffice it to say that the billing invoices submitted with Gould's fee petition are indeed riddled with time billed to "strategize[,]" "confer[,]" "correspond[,]" and "follow up" internally with Gould's attorneys. (*See* ECF 165-1).

Gould, however, clarifies in its reply brief that although the references to internal conferences were still included in the Benesch Invoices filed with the fee petition, Gould had already reduced the billing proportionally to exclude the time spent in internal conferences. (ECF 170 at 10 ("[T]otal visible 'Bill Hours' on the Benesch Invoices sum to 374.55 hours, while [Gould] seeks recovery for only 217.56 hours.")). While this was not necessarily clear in Gould's fee petition and exhibits, it is now clear in Secco's Supplemental Declaration and exhibits filed with Gould's reply brief. (*See* ECF 170-2 ¶¶ 10-16). Specifically, the annotated Benesch Invoices confirm the time spent in internal conference was already deducted, aside from 16 entries that Gould concedes it inadvertently included in the fee petition. (*See* ECF 170-3; ECF 170-2 ¶¶ 12-15; ECF 170 at 10 n.6). Gould now reduces those 16 entries proportionally to exclude the internal conference time, decreasing Gould's initial fee request of $123,650.50 by an additional $4,293.75 and $8,421.35, resulting in a fee request of $110,935.40. (ECF 170-2 ¶¶ 12-15; 170-3). Given that the internal conference entries have now been sufficiently accounted for, the Court sees no need to further reduce Gould's requested fees on this basis.

6. Summary of Fee Deductions

In sum, Gould's requested fees of $123,650.50 will be reduced as follows:

(a) by $1,391.25 due to vague and inadequate billing entries;

(b) by $16,620.95 due to excessive time on routine tasks and duplicative work;

(c) by $4,293.75 due to Gould's voluntary additional deduction of internal conference time in 6 entries (ECF 170-2 ¶¶ 11-12); and

(d) by $8,421.35 due to Gould's voluntary additional deduction of internal conference time in 10 entries (*Id.* ¶¶ 13-14).

In total, then, Gould's fee petition will be granted in part, in that the requested fees of $123,650.50 will be reduced to $92,923.20. Plaintiff's objections to the fee petition are otherwise overruled.

### IV. CONCLUSION

In conclusion, Gould's request for attorney fees incurred in making its successful motion to compel (ECF 165) is GRANTED IN PART in that the requested fees of $123,650.65 will be reduced to $92,923.20; Plaintiff's objections to the fee petition (ECF 169) are OTHERWISE OVERRULED. The Court ORDERS Plaintiff to pay Gould's attorney fees in the amount of $92,923.20 within 30 days.

SO ORDERED.

Entered this 1st day of July 2025.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge